UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ELI SAMUEL FIGUEROA a/k/a/ ELI SAMUEL,

        Plaintiff,

– against –

Det. DONNAMARIE MAZZA, Det. CHRISTOPHER KAROLKOWSKI, Det. TODD NAGROWSKI, Det. JOSEPH FAILLA, Sgt. DENNIS CHAN,

        Defendants.

**MEMORANDUM, ORDER & JUDGMENT**
11-CV-3160



FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 30 2014 ★
BROOKLYN OFFICE

**Appearances:**

Eli Samuel Figueroa
a/k/a Eli Samuel

Robert M. Rambadadt
The Rambadadt Law Office
20 West 20th Street, Second Floor
New York, NY 10011
646-450-8049

Rosa L. Barreca
Barreca Law
The Philadelphia Building
1315 Walnut Street, Suite 320
Philadelphia, PA 19107
267-918-6082

DonnaMarie Mazza
Christopher Karolkowski
Todd Nagrowski
Joseph Failla
Dennis Chan

Joseph A. Marutollo
Virginia Nimick
New York City Law Department
Special Federal Litigation Unit
100 Church Street
New York, NY 10007
212-356-2334

1

JACK B. WEINSTEIN, Senior United States District Judge:

**Table of Contents**

I. Introduction ........................................................................................................... 2
II. Facts ..................................................................................................................... 5
III. Jury Verdict .......................................................................................................... 6
IV. Law ...................................................................................................................... 7
   A. Judgment as a Matter of Law Standard ............................................................ 7
      1. Timely Fed. R. Civ. P. 50(b) Motion ............................................................ 7
      2. "Untimely" Fed. R. Civ. P. 50(b) Motion ...................................................... 8
   B. False Arrest Standard ...................................................................................... 8
   C. Excessive Force Standard ................................................................................ 9
   D. New York State Law Assault Standard .......................................................... 10
   E. Failure to Intervene Standard ........................................................................ 10
V. Application of Law to Facts ................................................................................ 11
   A. False Arrest ................................................................................................... 11
   B. Excessive Force and Assault ......................................................................... 13
   C. Failure to Intervene ....................................................................................... 14
VI. Conclusion ......................................................................................................... 15

**I. Introduction**

Rejecting the verdict of a dedicated, intelligent, and assiduous cross section of the community—as this jury was—can only be justified on the strongest grounds. Here, the evidence stands stalwartly against a verdict in plaintiff's favor with respect to all his claims for false arrest, excessive force, and assault.

Plaintiff had an appealing background. He laid claim to a series of advanced degrees, among them in law and theology. He claimed to have lectured widely on theological and moral problems throughout the world. He testified to having earned the esteem of a coterie of wealthy individuals dedicated to philanthropy who, for decades, supported his efforts to disperse funds to persons he deemed "needy." That such a man was publicly humiliated by an arrest that occurred in his mother's home, leading to a public view of himself surrounded by more than a dozen police officers, might have offended the jury.

2

The police testified that plaintiff was cooperative and docile when they arrested him—an attitude inconsistent with the aggressive nature of plaintiff while testifying that he was outraged by the arrest. This incongruity was likely to have led the jury to conclude that the police officers on the stand had not been candid.

An attempt could be made to support the verdict on the ground that the police officers who testified could not be believed—that the evidence they gave in their favor was a tissue of lies against a person they all wanted to punish. But, as Learned Hand warned long ago, "although it is . . . true that in strict theory a party having the affirmative might succeed in convincing a jury of the truth of his allegations in spite of the fact that all the witnesses denied them, we think it plain that a verdict would nevertheless have to be directed against him." *Dyer v. MacDougall*, 201 F.2d 265, 269 (2d Cir. 1952). Despite its logic, disbelief of a positive assertion does not sufficiently prove the opposite. While the court recognizes a general jury antipathy toward police officers in many civil and criminal cases in recent years, defendants' possible mendacity alone does not sufficiently prove liability. The law does not countenance unsupported verdicts explicable only in the sympathy of the jury for the plaintiff.

In this case, the contemporary artifacts of evidence of crimes by plaintiff were so compelling as to have made a failure to arrest for probable cause almost a dereliction of duty. Plaintiff's admitted physical resistance made appropriate the de minimis force used to move him from the place of his arrest to a police vehicle. Although the facts and the testimony of eyewitnesses support the finding that plaintiff was repeatedly struck by an unnamed police officer, the defendants he claims failed to intervene could not have interceded to stop the assault.

Charges against plaintiff were eventually dropped. Plaintiff sued. Four claims were tried. Three were pursuant to Section 1983 of Title 42: false arrest, excessive force, and failure

3

to intervene; and one was a New York State law assault claim. Plaintiff alleged that (1) all five defendant police officers, DonnaMarie Mazza, Todd Nagrowski, Christopher Karolkowski, Joseph Failla, and Dennis Chan, falsely arrested him; (2) Karolkowski and Failla assaulted him and used excessive force against him; and (3) Failla and Chan failed to intervene when he was assaulted by an unnamed police officer.

After a five and one half day trial, defendants made a timely motion for a judgment as a matter of law ("JMOL") with respect to the false arrest, excessive force, and assault claims. Trial Tr. 681:16–685:21, Sept. 12, 2014. As to false arrest, the court reserved decision; as to excessive force and assault, the court denied the motion. Trial Tr. 682:8–12; 685:6–13. Defendants timely renewed their JMOL motions during jury deliberations and after verdict. Trial Tr. 837:5–10; 848:18–23, Sept. 17, 2014; Trial Tr. 871:20–24, Sept. 18, 2014. They first made a JMOL motion with respect to the failure to intervene claim during, and then after, jury deliberations. Trial Tr. 836:23–841:17, Sept. 17, 2014; Trial Tr. 872:6–874:21, Sept. 18, 2014.

Following three and one half days of deliberating, the jury returned a verdict in plaintiff's favor for false arrest, excessive force, and assault. They were unable to reach a verdict regarding failure to intervene. In total, the jury awarded plaintiff $574,000.

Despite misgivings articulated by the court at various points on the record with respect to the sufficiency of evidence regarding plaintiff's claims, following the dictate of the Court of Appeals for the Second Circuit, "in the interest of judicial efficiency," the court "refrain[ed] from granting a directed verdict" under Rule 50 and "allow[ed] the matter to be decided, at least in the first instance, by the jury." *Williams v. Cnty. of Westchester*, 171 F.3d 98, 102 (2d Cir. 1999) (citing cases). This is one of those *rare* cases in which—drawing *all* inferences of fact against

defendants—the evidence overwhelmingly dictates dismissal. For the reasons stated below, judgment notwithstanding the verdict is granted.

## II. Facts

On June 29, 2010, an employee at a Duane Reade store in Brooklyn presented police of the 72nd precinct with a series of photographs of a distressed boy, approximately two years of age, in various stages of undress in what appeared to be the public restroom of a McDonald's restaurant. Trial Tr. 77:13–86:15, Sept. 8, 2014; Trial Tr. 186:20–24; 217:22–218:4, Sept. 9, 2014. Some of the photographs contained detailed shots of the child's genitals and anus. Trial Tr. 78:17–19; 82:15–22; 83:1–7; 83:11–17; 83:21–84:3, Sept. 8, 2014. A date- and time-stamped money order and a copy of the June 25, 2010 Daily News appeared in the background of each photograph. Trial Tr. 77:13–86:16. The Duane Reade employee informed the police that, on June 29, 2010, he had received a phone call from a woman asking him to delete a photo order for these pictures. Trial Tr. 185:2–6; 186:6–10, Sept. 9, 2014. Various specialized units of the police force were mobilized to search for the boy, who appeared in these photographs. Trial Tr. 219:16–220:9; 234:9–235:1. Police spoke with the child's grandmother who reported that plaintiff had inflicted bruises on her daughter in order to exorcise demons from her. Trial Tr. 227:4–24.

On June 30, 2010, the cell phone number—through which the calls to the Duane Reade to cancel printing the photographs had been made (eleven in all)—was traced by police to a cell phone owned by plaintiff. Trial Tr. 445:24–446:17, Sept. 11, 2014; Trial Tr. 619:5–620:15; 629:19–22, Sept. 12, 2014. Police, including the five named defendants, who were assigned to the case with many other police officers, had not yet located the child or his mother despite extensive efforts to do so. On the evening of June 30, the Technical Assistance Response Unit of the New York City Police Department ("TARU") located the phone (and plaintiff) at 290 East

4th Street, apartment 2B, Manhattan, New York, the residence of plaintiff's mother. Trial Tr. 425:15–426:6; 473:4–9 Sept. 11, 2014.

Plaintiff did not cooperate with police when they confronted him in his mother's apartment. Trial Tr. 584:7–23; 587:4–10; 588:1–6, Sept. 12, 2014. The parties have stipulated, and the evidence supports the conclusion, that plaintiff was arrested at 10:00 p.m., on June 30, 2010, at 290 East 4th Street, apartment 2B. Trial Tr. 684:8–15. When plaintiff held himself rigid, refusing to walk, officers Karolkowski and Failla pushed him to a police car parked outside the building. Trial Tr. 581:2–582:3. While he was in the back of the police car, with officers Failla and Chan seated in the front, an unnamed police officer approached the car. Trial Tr. 591:21–25. He grabbed plaintiff by the collar, punching him five times in rapid succession, demanding the arrestee's cell phone. Trial Tr. 591:25–592:3. The assault lasted considerably less than twenty seconds. Trial Tr. 877:2–12, Sept. 18, 2014.

### III. Jury Verdict

The jury verdict was as follows:

- Claim against DonnaMarie Mazza for false arrest under Section 1983, liability proved, compensatory damages in the amount of $52,000.

- Claim against Todd Nagrowski for false arrest under Section 1983, liability proved, compensatory damages in the amount of $52,000.

- Claims against Christopher Karolkowski for (1) false arrest under Section 1983, liability proved, compensatory damages in the amount of $52,000; (2) excessive force under Section 1983, liability proved, compensatory damages in the amount of $80,000; and (3) assault under New York State law, liability proved, compensatory damages in the amount of $77,000. Total compensatory damages: $209,000.

- Claims against Joseph Failla for (1) false arrest under Section 1983, liability proved, compensatory damages in the amount of $52,000; (2) excessive force under Section 1983, liability proved, compensatory damages in the amount of $80,000; (3) failure to intervene to prevent the alleged assault while plaintiff was in police car, under Section 1983, jury unable to reach a verdict; and (4) assault under New York State

6

law, liability proved, compensatory damages in the amount of $77,000. Total compensatory damages: $209,000.

- Claims against Dennis Chan for (1) false arrest under Section 1983, liability proved, compensatory damages in the amount of $52,000; and (2) failure to intervene to prevent the alleged assault while plaintiff was in police car, under Section 1983, jury unable to reach a verdict.

Trial Tr. 882:15–884:21. A mistrial with respect to the failure to intervene claims was declared.

Trial Tr. 888:16–18. The jury was discharged. Trial Tr. 889:15–17.

## IV. Law

### A. Judgment as a Matter of Law Standard

#### 1. Timely Fed. R. Civ. P. 50(b) Motion

In deciding Rule 50(b) motions, the evidence is viewed strongly against the movant.

> In ruling on a motion for judgment as a matter of law under Fed. R. Civ. P. 50(b) . . . a district court is required to consider the evidence in the light most favorable to the party against whom the motion was made and to give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence. The court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury. . . . Only if there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against the moving party may the court properly grant the motion.

*LeBlanc–Sternberg v. Fletcher*, 67 F.3d 412, 429 (2d Cir. 1995), *cert. denied sub nom. Vill. of Airmont, N.Y. v. LeBlanc–Sternberg*, 518 U.S. 1017 (1996) (citations omitted) (internal quotation marks omitted). But, when no reasonable jury could find against the movant, a Rule 50 motion to dismiss must be granted. As the Court of Appeals for the Second Circuit declared:

> When the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict, the court should determine the proceeding by non-suit, directed verdict or otherwise in accordance with the applicable practice without submission to the jury, or by judgment notwithstanding the verdict.

*Dyer*, 201 F.2d at 271 (Frank J., concurring) (citation omitted) (international quotation marks omitted).

### 2. "Untimely" Fed. R. Civ. P. 50(b) Motion

The language of the Federal Rules of Civil Procedure requires that motions for judgment as a matter of law be made after trial and prior to jury deliberations. *Provost v. City of Newburgh*, 262 F.3d 146, 161 (2d Cir. 2001). As the *Provost* court noted:

> Fed. R. Civ. P. 50 itself . . . sets forth the procedures by which parties may seek judgment as a matter of law in the district court. That rule allows a party to request judgment as a matter of law after the trial under Fed. R. Civ. P. 50(b) *only* if it sought such relief before the jury retired to deliberate under Fed. R. Civ. P. 50(a)(2), and limits the permissible scope of the later motion to those grounds specifically raised in the prior motion for judgment as a matter of law.

*Id.* (emphasis added) (citation omitted) (internal quotation marks omitted). Rule 50, however, is not meant to be "woodenly" applied; the court does not countenance "an unwarranted triumph of form over substance." *Doctor's Assocs., Inc. v. Weible*, 92 F.3d 108, 113 (2d Cir. 1996) (citations omitted) (internal quotation marks omitted); *see also Wolf v. Yamin*, 295 F.3d 303, 308 (2d Cir. 2002) (finding that "[e]ven if his objection came too late, [defendant] was entitled to challenge the jury verdict by moving, after the verdict, for judgment as a matter of law under Rule 50(b)").

### B. False Arrest Standard

The Fourth Amendment, made applicable to the states by the Fourteenth Amendment, provides: "The right of people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. An arrest made without probable cause violates an individual's Fourth Amendment right to be free from unreasonable seizures. *Covington v. City of New York*, 171 F.3d 117, 122 (2d Cir. 1999). The existence of probable cause to arrest for some criminal offense—even an offense other than the one identified by the arresting officer at the time of arrest—defeats a false arrest Fourth Amendment claim. *Devenpeck v. Alford*, 543 U.S. 146, 154–55 (2004).

Probable cause exists "when the arresting officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (citation omitted). Whether probable cause exists depends upon the reasonable objective conclusion to be drawn from the facts known to the arresting officer and those working with him or her at the time of the arrest. *See Maryland v. Pringle*, 540 U.S. 366, 371 (2003).

### C. Excessive Force Standard

Excessive force claims brought under Section 1983 require that force be exerted under the color of state law. *Humphrey v. Landers*, 344 F. App'x 686, 688 (2d Cir. 2009) (citing *Posr v. Doherty*, 944 F.2d 91, 94–95 (2d Cir. 1991)). Police officers' application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* at 396 (citation omitted) (internal quotation marks omitted).

"[T]he [Court of Appeals for the] Second Circuit and district courts in the Circuit recognize the concept of 'de minimis' injury and, when the injury resulting from the alleged excessive force falls into that category, the excessive force claim is dismissed. Injuries held to be de minimis for purposes of defeating excessive force claims include short-term pain, swelling, and bruising, brief numbness from tight handcuffing, claims of minor discomfort from tight handcuffing, and two superficial scratches with a cut inside the mouth." *Lemmo v. McKoy*, No. 08-CV-4264(RJD), 2011 WL 843974, at *5 (E.D.N.Y. Mar. 8, 2011) (citations omitted). *See*

9

*also, e.g., Johnson v. Police Officer #17969*, No. 99-CV-3964(NRB), 2000 WL 1877090, at *4– *5 (S.D.N.Y. Dec. 27, 2000) (finding that plaintiff's resistance to arrest rendered defendant's limited use of force in this circumstance, which involved tackling plaintiff to the ground and restraining him until backup arrived, reasonable), *aff'd* 19 F. App'x 16 (2d Cir. 2001).

**D. New York State Law Assault Standard**

Under New York law, an assault is "an intentional placing of another person in fear of imminent harmful or offensive contact." *Girden v. Sandals Int'l*, 262 F.3d 195, 203 (2d Cir. 2001). As in the excessive force standard with respect to Title 42 of Section 1983, "where there has been a lawful arrest, intentional contact with the arrested person does not constitute assault and battery, provided [the] force is reasonable." *Cunningham v. United States*, 472 F. Supp. 2d 366, 381 (E.D.N.Y. 2007) (citing New York State court cases).

**E. Failure to Intervene Standard**

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). *See also, e.g., O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988) (same).

"An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official." *Anderson*, 17 F.3d at 557 (citations omitted); *see also Jean–Laurent v. Wilkerson*, 461 F. App'x 18, 21 (2d Cir. 2012) (citation omitted) (internal quotation marks omitted) ("Failure to intercede results in liability where an officer observes excessive force is being used or has reason to know that it will be.").

"'In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring.'" *Id.* (citation omitted). Assaults that take place in "less than thirty seconds" do not offer police officers sufficient time to intercede in order to prevent the assault. *Sash v. United States*, 674 F. Supp. 2d 531, 545 (S.D.N.Y. 2009). *See also Elufe v. Aylward*, No. 09-CV-458(KAM)(LB), 2011 WL 477685, at *9 (E.D.N.Y. Feb. 4, 2011) (citation omitted) ("Where the alleged force consists of a single push or a 'rapid succession' of blows, courts have found that the officer did not have a realistic opportunity to intervene.").

## V. Application of Law to Facts

### A. False Arrest

Plaintiff claims police did not have probable cause to arrest him in his mother's Manhattan apartment on June 30, 2010, at 10:00 p.m. The evidence demonstrates that the opposite is true.

On June 30, 2010, police had good reason to suspect that a two-year-old boy had been kidnapped. Trial Tr. 362:4–14, Sept. 10, 2014; Trial Tr. 410:11–19; 458:12–459:3; 473:4–7, Sept. 11, 2014. Police had eighteen photographs in their possession—each of which contained a date- and time-stamped money order and a copy of the June 25, 2010 Daily News—depicting a distressed young boy in various stages of undress. Trial Tr. 77:13–86:15; 87:15–24, Sept. 8, 2014; Trial Tr. 170:2–7, Sept. 9, 2014. A number of the photographs zoomed in on the child's anus and genitals. Trial Tr. 78:17–19; 82:15–22; 83:1–7; 83:11–17; 83:21–84:3, Sept. 8, 2014.

Before arresting plaintiff at 10:00 p.m. on June 30, police were aware that the child's mother had dropped off the photographs, originally contained on a digital card, at a local Duane Reade store on June 26, 2010. Trial Tr. 196:16–198:8, Sept. 9, 2014. They were also informed that, three days later, on June 29, 2010, the same Duane Reade store had received a phone call

from a woman attempting to cancel the order and stop development of the photographs. Trial Tr. 185:2–6; 186:18–24. Esteban Arias, the employee who received the call from this woman was going to throw away the photographs, but upon seeing "something that kind of disturbed [him] in the pictures," notified police. Trial Tr. 185:22–24.

(Plaintiff was present when the child's mother used his cell phone to call the Duane Reade. Trial Tr. 549:3–18, Sept. 11, 2014. This was not known to police at the time of arrest and is not relied on by the court in ruling on the Rule 50 motion.)

The record shows that police sensibly took the position that the photographs were of a type used to show that a missing child was alive and could still be ransomed and saved. Trial Tr. 460:4–16. The force of this evidence was not reduced by the fact that police knew that the mother had been engaged in a custody battle at family court and that the mother had taken pictures of the child in a naked state before June 25, 2010. Trial Tr. 57:15–58:1, Sept. 8, 2014; Trial Tr. 260:8–10, Sept. 10, 2014.

(The fact that the family court judge had ruled that the mother would lose custody of the child if she took any more photographs of the child in a naked state was not necessarily known to police at the time of arrest. Trial Tr. 105:14–106:3, Sept. 9, 2014. It is not relied upon by the court in ruling on the Rule 50 motion.)

As of 10:00 p.m., on June 30, a substantial portion of the police force, from various divisions, including Brooklyn South Homicide Task Force, Major Case Unit, and TARU, had been mobilized to look for the young boy in the photographs. Trial Tr. 219:16–20; 234:24–25. Attempts to locate the child were unsuccessful. Trial Tr. 232:9–13; 233:5–234:16.

Despite the major efforts made by the police force to locate the owner of the cell phone used to call Duane Reade—who presumably had relevant knowledge—the child had still not

been located by the evening on June 30. Trial Tr. 425:15–426:6; 473:4–9, Sept. 11, 2014. Through an Internal Affairs Bureau ("IAB") complaint filed by plaintiff on June 28, 2010, police traced the phone to plaintiff. Trial Tr. 567:10–568:21, Sept. 12, 2014. They had heard from the grandmother of the child charges that plaintiff had abused the child's mother. Trial Tr. 227:8–24, Sept. 9, 2014.

TARU finally located the telephone in plaintiff's possession while he was at his mother's Manhattan apartment at 290 East 4th Street. Trial Tr. 367:20–23, Sept. 10, 2014. With the child and his mother still not located at 10:00 p.m. on June 30, based on reasonable conclusions drawn from the facts then known, defendants had probable cause to believe that plaintiff had been involved in the commission of one or more crimes, and thus to arrest him.

By the time of the arrest, police officers had firmly linked plaintiff to the photographs through his telephone. Although the degree of his involvement had yet to be ascertained, when the police located him, they had probable cause to arrest him for the following crimes: (1) endangering the welfare of a child, N.Y. Penal L. § 260.10; (2) aiding in the commission of a crime, N.Y. Penal L. § 115.00; (3) solicitation, N.Y. Penal L. § 100.00; (4) conspiracy, N.Y. Penal L. § 105.00; (5) kidnapping, N.Y. Penal L. § 135.25; (6) attempt to commit a crime, N.Y. Penal L. § 110.00; and (7) obscenity, N.Y. Penal L. § 235.05.

Defendants' Rule 50 motion regarding false arrest is granted.

### B. Excessive Force and Assault

Plaintiff claims the police assaulted him and used excessive force on him during his arrest on June 30, 2010. Plaintiff's testimony contradicts this assertion.

The record shows that two officers applied de minimis pressure to plaintiff's shoulders and hands as they escorted him the necessary 200–300 feet to the police car; he had not been

13

handcuffed or roughed-up at any point. Trial Tr. 577:5–582:7; 587:1–16, Sept. 12, 2014. The amount of force used by defendant officers Karolkowski and Failla to remove plaintiff to the police car for transportation to the station for booking was reasonable. *See Graham*, 490 U.S. at 396 ("[T]he right to make an[y] arrest . . . carries with it the right to use some degree of physical coercion or threat thereof to effect it."). Plaintiff, acting out his physical movements for the jury, demonstrated that he resisted leaving the apartment with the officers by stiffening his legs. Trial Tr. 587:1–10, Sept. 12, 2014. The arrest situation mandated that the officers apply de minimis force to plaintiff in order to move him from his mother's apartment to the police car, in which they placed him for transportation to precinct headquarters.

Plaintiff testified that none of the five defendants caused him any physical injuries, supporting the conclusion that the degree of force used on him by the officers, while he was being escorted to the police car, was de minimis and appropriate. Trial Tr. 674:4–18; *see also supra* Part IV.C & D. The record does not indicate that defendants Karolkowski and Failla sought to intentionally place plaintiff in fear of imminent harm or offensive contact.

Defendants' Rule 50 motion regarding excessive force and assault is granted.

### C. Failure to Intervene

With respect to the assault by the unknown police officer, which occurred in the presence of defendant officers Failla and Chan, the transcript reads as follows: "[H]e just reached in with his left hand and grabbed me. He said give, me your mother-fucking phone, short punches. Just boom boom boom boom boom." Trial Tr. 592:1–3. On the witness stand, while giving his testimony, plaintiff stood up and acted out the event. Trial Tr. 595:11–14. As timed in court, the sequence took considerably less than twenty seconds. Trial Tr. 877:3–12, Sept. 18, 2014. The blows occurred in such rapid succession that defendants Failla and Chan—who plaintiff noted

were seated in the front of the vehicle, not in the rear with him—did not have a realistic opportunity to intervene. Trial Tr. 588:21–589:9, Sept. 12, 2014. *See, e.g.*, *O'Neill*, 839 F.2d at 11–12 (finding no realistic opportunity to intercede in use of excessive force by officer where punches occurred in rapid succession); *see also supra* Part IV.E.

Defendants' failure to intervene Rule 50 motion is granted.

## VI. Conclusion

All defendants' Rule 50 motions are granted. The jury verdict is set aside. The case is dismissed on the merits.

SO ORDERED.

_____
Jack B. Weinstein
Senior United States District Judge

Date: September 30, 2014
Brooklyn, New York