UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                                   :
ELI SAMUEL FIGUEROA,                                               :          11-CV-3160 (ARR)(CLP)
                                                                   :
                    Plaintiff,                                     :          NOT FOR ELECTRONIC
                                                                   :          OR PRINT PUBLICATION
        -against-                                                  :
                                                                   :          OPINION & ORDER
DONNA MARIE MAZZA; CHRISTOPHER                                     :
KAROLKOWSKI; TODD NAGROWSKI; JOSEPH                                :
FAILLA; and DENNIS CHAN, individually and in their                :
official capacities,                                               :
                                                                   :
                    Defendants.                                    :
                                                                   :
------------------------------------------------------------------ X

ROSS, United States District Judge:

        Plaintiff brings a civil rights case against defendant police officers stemming from his

interactions with the police on June 30, 2010. A prior trial was held, and judgment was entered

in favor of defendants on all counts notwithstanding a verdict for plaintiff. On remand from the

Second Circuit, the following claims remain: (1) unlawful entry and (2) failure to intervene to

stop an alleged assault. Currently before the court is defendants' motion for partial summary

judgment on the unlawful entry claim. Defendants argue that their warrantless entry into

plaintiff's mother's apartment was justified by the "emergency aid" exception to the Fourth

Amendment's warrant requirement. Plaintiff argues that the facts known to officers at the

moment of entry did not present an urgent need to render aid. Because I find that it was

reasonable for defendants to conclude that a warrantless entry was justified by the emergency aid

exception, I find that defendants are entitled to qualified immunity on the unlawful entry claim.

**BACKGROUND**

**A. Factual Background**

The following facts are substantiated by the record from the previous trial and viewed in the light most favorable to plaintiff. [1]

**1. Concepcion and Nagrowski's Investigations**

On June 30, 2010, nonparty Officer Concepcion received a call from Steven Arias, the manager of a Duane Reade. Concepcion Test., Trial Tr. 165:9-25, ECF No. 207 at *71. Arias explained that he had received numerous calls from an unknown female pleading with him to delete images she had attempted to develop from a memory card using Duane Reade's self-service machine. Id. When he retrieved the photographs, Arias saw that they were naked photographs of a child, approximately two years of age. Id. Arias showed the photographs to Concepcion, who became immediately concerned that the child might be a victim of kidnapping or sexual abuse. Concepcion Test., Trial Tr. 175:22-176:13, ECF No. 207 at *81-82. In many of the photographs, which were apparently taken in a public restroom, the child was naked. He appeared to be in distress. Saenz Test., Trial Tr. 117:19-22, 118:6-8, ECF No. 207 at *23-24. Some photographs showed pictures of the child's genitalia and anus, including pictures of those areas at close range. Id., Trial Tr. 78:17-19, 82:17-22, 83:3-84:3, ECF No. 206 at *78, *82-84; Id., Trial Tr. 115:2-4, 15-16, ECF No. 207 at *21. In other photographs, the child was shown next to a newspaper and a money order. Id., Trial Tr. 77:19-22, 79:22-80:24, ECF No. 206 at *77, *79-80. The photographs were date-stamped June 25, 2010. Id., Trial Tr. 77:23-24, ECF

---

none
[1] "[C]ourts have routinely relied on prior trial testimony as proper evidence in deciding summary judgment motions." United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc., 899 F. Supp. 974, 985 (E.D.N.Y. 1994) (citing Kelley v. Price-Macemon, 992 F.2d 1408, 1415 n.12 (5th Cir. 1993)).

No. 206 at \*77.

After speaking with Arias, Concepcion informed the detective squad and the human trafficking division about the contents of the photographs. Concepcion Test., Trial Tr. 166:19-167:10, ECF No. 207 at \*72-73. At this point, defendant Detective Todd Nagrowski took over the investigation. See id. Nagrowski also interviewed Arias. Nagrowski Test., Trial Tr. 209:14-210:11, ECF No. 207 at \*115-16. Nagrowski determined that the photographs were taken in the public restroom of a McDonald's. Id., Trial Tr. 217:18-218:11, ECF No. 207 at \*123-24. By using the serial number on the money order shown in the photographs, Nagrowski obtained surveillance video of a woman purchasing a money order accompanied by the child from the photographs. Nagrowski Test., Trial Tr. 211:8-18, 215:9-216:3, ECF No. 207 at \*117, \*121-22. Nagrowski recognized this woman from a prior domestic dispute relating to a custody dispute. Id., Trial Tr. 223:11-15, ECF No. 207 at \*129.

At this point, Nagrowski reviewed a file collected by nonparty Detective Hawkins, which documented her investigation into allegations of abuse by Shirley Saenz against her son's father. Shirley first complained to Hawkins on June 16, 2010.[2] Pl.'s Proposed Ex. 6 at 5.[3] According to the file, Shirley had noticed rashes on her son's anus after visits with his father and suspected sexual abuse. Id. The file also noted the following:

> [Shirley] did present pictures, which she stated were taken on 6/4/2010 at Dr. Hassan's office, prior to the [child] going to the [father's] home and then after, when returned home on 6/5/2010. The pictures show that the [child's] anus was red and had some sort of rash.

_____

[2] For clarity, the court refers to Shirley Saenz and her mother, Beatrice Saenz, by their first names throughout this opinion.

[3] Because no copy of this exhibit, which contains sensitive information about a minor, has been electronically filed, the court cites to the courtesy copy of proposed exhibits filed with chambers along with the parties' JPTO.

Id. Dr. Hassan later confirmed to Hawkins that these photographs were taken at the time of his exam of the child. Id. at 7. Elsewhere, Hawkins notes that another doctor, upon seeing the photographs, concluded that the child merely had a diaper rash. Id. at 6. No copies of photographs were found in Hawkins's file. Finally, in an interview with the child's father, Hawkins learned that, according to the father, a judge had told Shirley to "stop taking pictures of the [child]'s private area" and that Shirley was "involved with a cult like religious group" led by "Pastor Eli." Id. at 8. On June 19, 2010, Hawkins closed the case after determining that "there was no sufficient evidence that the [child] was a victim of any criminal offense." Id. at 9. [4]

Nagrowski subsequently went to the home of Beatrice Saenz. Id., Trial Tr. 223:23-224:19, ECF No. 207 at *129-30. Beatrice identified the child in the photographs as her grandson, minor F.R.J. Id., Trial Tr. 225:1-10; ECF No. 207 at *131. Nagrowski informed her that the police did not know where the child was and were trying to find him. Id., Trial Tr. 308:7-14, ECF No. 208 at *66. Beatrice said she was estranged from her daughter Shirley. Id., Trial Tr. 227:8-19; ECF No. 207 at *133. Beatrice also told Nagrowski that Shirley had joined a

---

[4] It is not readily apparent from the record whether or when Nagrowski reviewed Hawkins's file. In addition, Hawkins's file was not accepted into evidence at trial nor submitted by either party on this motion. Therefore, this file is not before the court on this motion. However, plaintiff urges that the information in this file was before the police at the moment they entered the apartment. See Pl.'s Am. Mem. Law Opp'n Defs.' Summ. J. Mot. & Cross-Mot. Summ. J. ("Pls.' Mem."), at 6-7, ECF No. 251 ("Plaintiff has presented facts and information supporting that the officers and detectives were aware . . . that an investigation was performed by Det. Hawkins involving allegations of sexual abuse and containing documenting photographs similar to the ones at issue. . . ."). Plaintiff should have submitted evidence to substantiate this claim. See Hicks v. Baine, 593 F.3d 159, 166 (2d Cir. 2010) ("[A] party may not rely on . . . conjecture as to the true nature of the facts to overcome a motion for summary judgment." (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995))). However, even if this evidence is considered, I still conclude that defendants are entitled to qualified immunity. Therefore, I treat this report as part of the record on summary judgment and assume that all defendants were aware of its contents at the moment they entered the apartment.

cult led by plaintiff, that she had seen numerous bruises on Shirley, and that Shirley had indicated that she got these bruises from plaintiff when he was exorcising demons from her.  Id. Finally, Beatrice told Nagrowski that Shirley was living with a friend, Isabel Romero, and provided that address.  Id., Trial Tr. 228:10-13, ECF No. 207 at *134.[5]  Nagrowski called the precinct and told them that he knew the names of the mother and child.  Id., Trial Tr. 260:25-261:6, ECF No. 208 at *18-19.

After speaking to Beatrice, Nagrowski went to the address she provided.  Id., Trial Tr. 233:5-8, ECF No. 207 at *139.  Romero confirmed that she was Shirley's roommate and stated that she had seen Shirley and her son sleeping in the apartment that morning.  Id., Trial Tr. 233:22-234:5, ECF No. 207 at *139-40; Trial Tr. 264:21-265:11, ECF No. 208 at *22-23.[6] Nagrowski asked Romero to contact him if she had contact with Shirley.  Id., Trial Tr. 233:22-234:5, ECF No. 207 at *139-40.

### 2.  Nagrowski Briefs Other Defendants

Defendants Christopher Karolkowski and Donnamarie Mazza came on-duty at 4:00 p.m. on June 30, 2010.  Karolkowski Test., Trial Tr. 435:4-12, ECF No. 209 at *37; Mazza Test., Trial Tr. 465:22-466:4, ECF No. 209 at *67-68.  They were shown the photographs.

---

[5] Plaintiff objects to statements made by Beatrice as inadmissible hearsay that should not be relied upon on a motion for summary judgment.  See Pl.'s Mem. at 10-11.  However, these statements are not used for the truth of the matter asserted, but rather for the effect they had informing the defendant officers' investigation of the photographs, and are therefore not hearsay. See Fed. R. Evid. 801(c) (defining hearsay as out of court statements offered for the truth of the matter asserted).

[6] At trial, Nagrowski first asserted that, to his knowledge, Romero had not seen Shirley that day, see id., Trial Tr. 233:22-234:8, ECF No. 207 at *139-40, but later recalled that Romero had seen Shirley and her son that morning, see id., Trial Tr. 264:21-265:11, ECF No. 208 at *22-23.  Because I draw all inferences in favor of plaintiff on this motion, I assume that Romero did tell Nagrowski that she had seen Shirley and the missing child.

Karolkowski Test., Trial Tr. 436:1-5, ECF No. 209 at *38; Mazza Test., Trial Tr. 467:2-4, ECF No. 209 at *69.  Karolkowski concluded that they were "proof of life" photographs taken to establish that a missing child is still alive in order to secure a ransom.  Karolkowski Test., Trial Tr. 460:4-16, ECF No. 209 at *62.  Mazza was informed that the child may have been abducted. Mazza Test., Trial Tr. 466:5-7, ECF No. 209 at *68.  Both officers were informed about the call to Duane Reade to cancel the photographs, and that efforts were being made to locate the phone number used to cancel the order.  Mazza Test., Trial Tr. 466:10-467:10, ECF No. 209 at *68-69; Karolkowski Test., Trial Tr. 436:5-438:3, ECF No. 209 at *38-40.  Finally, Karolkowski was told that Nagrowski had a lead on the mother of the child.  Id., Trial Tr. 438:8-16, ECF No. 209 at *40.  Nagrowski spoke to Karolkowski "throughout the night."  See id., Trial Tr. 441:21-442:3, ECF No. 209 at *43-44.

At an unknown time, defendant Joseph Failla reported to the precinct.  Failla Test., Trial Tr. 361:7-24, ECF No. 208 at *119.  Failla was a member of the Major Case Unit, a specialized unit that assists with, inter alia, kidnapping cases.  Id., Trial Tr. 360:11-25, ECF No. 208 at *118. Upon arrival at the precinct, Failla spoke with Nagrowski about his investigation.  Id., Trial Tr. 361:25-362:1, ECF No. 208 at *119-20.  He was shown the photographs, told the case involved a possible kidnapping, and informed about the telephone number associated with the photographs. Id., Trial Tr. 362:2-18, ECF No. 208 at *120.

### 3.  Defendants Investigate the Park

Meanwhile, the Technical Assistance Response Unit ("TARU") tracked the telephone number to an area near Tompkins Square Park, in lower Manhattan.  Failla Test., Trial Tr. 363:9-364:14, 365:24-366:3, ECF No. 208 at *121-24.  Based on this information, Mazza and Karolkowski searched the park for the boy in the photographs.  Mazza Test., Trial Tr. 468:4-19,

ECF No. 209 at *70.  Finally, the TARU pinpointed a more exact location for the telephone used to call Duane Reade – plaintiff's mother's apartment.  Failla Test., Trial Tr. 367:11-23, ECF No. 208 at *125.[7]

### 4. The Entry

When Failla, Mazza and Karolkowski drove to the apartment, they saw a TARU van and three to five other unmarked police cars, including members of "the felony apprehension squad." Karolkowski Test., Trial Tr. 444:5-17, ECF No. 209 at *46.  Police had traced the phone number to plaintiff through an Internal Affairs Bureau ("IAB") complaint filed by plaintiff on June 28, 2010.  Samuel Test., Trial Tr. 567:10-568:21, ECF No. 210 at *9-10.  Plaintiff's IAB complaint alleged that Hawkins's investigation of potential abuse was insufficient.  Id., Trial Tr. 568:16-569:23, ECF No. 210 at *10-11.

Just before officers entered the apartment, nonparty officer Borrero, a hostage negotiator, called plaintiff to determine the specific apartment in which he was located.  See Failla Test., Trial Tr. 367:11-23, ECF No. 208 at *125; Karolkowski Test., Trial Tr. 446:4-17, ECF No. 209 at *48.  Borrero told plaintiff that Shirley and the boy had been kidnapped.  Samuel Test., Trial Tr. 569:24-570:1, ECF No. 210 at *11-12.  In response, plaintiff told the officer that Shirley and her son were not kidnapped, that he had spoken to Shirley an hour prior, and that he would not go to the 72nd precinct.  Id., Trial Tr. 570:3-8, 571:4-8, ECF No. 210 at *12-13.  He then hung up the phone.  Id., Trial Tr. 572:4-7, ECF No. 210 at *14.  After this conversation, the Entry Defendants were told that plaintiff, "the owner of the phone that was given to the Duane Reade manager associated with the photos," would come with them to the precinct.  Karolkowski Test.,

---

[7] Plaintiff admits that Shirley called Duane Reade using his cell phone.  Samuel Test., Trial Tr. 660:3-11, ECF No. 210 at *102.

Trial Tr. 445:24-446:17, ECF No. 209 at *47-48. They "expect[ed] him to be cooperative."

Mazza Test., Trial Tr. 473:10-24, ECF No. 209 at *75; see also Failla Test., Trial Tr. 373:1-6,

ECF No. 208 at *131. [8]

At this point, defendants received orders to go to a specified apartment on the second

floor of the building and bring plaintiff back to the precinct. Karolkowski Test., Trial Tr. 445:2-

7, 446:15-17, ECF No. 209 at *47-48; see also Failla Test., Trial Tr. 369:21, ECF No. 208 at

*127 (indicating that plaintiff was a suspect in the potential kidnapping).

Failla, Mazza, and Karolkowski, along with approximately ten other nonparty officers,

approached plaintiff's mother's apartment. Failla Test., Trial Tr. 368:21-369:5, ECF No. 208 at

*126-27; Karolkowski Test., Trial Tr. 447:3-19, ECF No. 209 at *49; Mazza Test., Trial Tr.

470:1-14, ECF No. 209 at *72. [9] According to Failla, they brought a large number of officers

with them because "despite the plaintiff agreeing he's going to cooperate . . . ultimately, if we go

up there and Mr. Samuel decides not to cooperate or jump out the window, we have multiple

people on the scene to take him with us." Failla Test., Trial Tr. 375:11-24, ECF No. 208 at *133.

After plaintiff's mother answered the door, Karolkowski pushed open the door and the

officers entered the apartment. Samuel Test., Trial Tr. 575:22-577:14, ECF No. 210 at *17-19. [10]

---

[8] While plaintiff disputes that he told the hostage negotiator he would leave with police, see Samuel Test., Trial Tr. 572:8-18, ECF No. 210 at *14, he offers no evidence controverting testimony that defendants were informed that he would leave willingly. In any event, any dispute over this fact is not material and does not affect the following analysis.

[9] After speaking to Shirley's roommate, Nagrowski received a call informing him that plaintiff had been located and proceeded to plaintiff's location. Nagrowski Test., Trial Tr. 234:9-235:1, ECF No. 207 at *140-41; Id., Trial Tr. 268:25-269:5, ECF No. 208 at *26-27. By the time he arrived, plaintiff was already in the back seat of an unmarked patrol car. Id., Trial Tr. 271:17-21, ECF No. 208 at *29.

[10] Plaintiff's account of the officers' entry is assumed for purposes of this motion.

Nonparty detective Leone then walked into the apartment and quickly searched each room to see if the woman and/or child were in the apartment. Failla Test., Trial Tr. 369:6-370:1, ECF No. 208 at *127-28. They were not. Id. Plaintiff was then arrested. Nagrowski Test., Trial Tr. 320:19-21, ECF No. 208 at *78.

Shirley and her son were subsequently located at Shirley's home. See Karolkowski Test., Trial Tr. 455:3-456:20, ECF No. 209 at *57-58.[11]

## B. Procedural History

Plaintiff Eli Samuel Figueroa filed the operative complaint on April 25, 2014, alleging civil rights violations against the City of New York, thirteen named officers, and "John Doe" officers. Third Am. Compl. ("TAC"), ECF No. 107.[12] As relevant to this motion, plaintiff stated claims for false arrest, unlawful entry and search, state law assault, and failure to intervene. Id. ¶¶ 126-66.

The Honorable Jack B. Weinstein, United States District Judge, dismissed plaintiff's unlawful entry claim[13] on summary judgment, finding that plaintiff did not have standing to object to the entry. Hr'g Tr. 9:9-18, ECF No. 220 at 9; see also Mem., Order & J. (Aug. 21, 2014), at 1, ECF No. 167. The court noted that it "d[id] not address the exigent circumstance issue, although there [is] very strong evidence of that circumstance." Hr'g Tr. 9:16-18, ECF No.

---

[11] According to Shirley, she had taken the photographs of her son to document alleged abuse by her husband during his visits with the child. Saenz Test., Trial Tr. 78:10-22, ECF No. 206 at *78.

[12] Shirley was a co-plaintiff, see id., but her claims settled before trial, see Stip. & Order Dismissal (May 30, 2014), ECF No. 120.

[13] The parties dispute whether plaintiff has preserved an illegal search claim in addition to his unlawful entry claim. See Defs.' Mem. Law Supp. Mot. Partial Summ. J. at 7 n.1, ECF No. 248 at *11. Because the grounds on which I base my decision to grant summary judgment to defendants apply equally to either claim, I do not address this dispute.

220 at 9.

A jury trial was held on plaintiff's claims for false arrest, excessive force, assault and failure to intervene. <u>See</u> Trial Tr., ECF Nos. 206-10, 215-19. The jury returned a verdict in plaintiff's favor for false arrest, excessive force, and assault, and awarded plaintiff $574,000 in damages. Trial Tr. 879:10-882:14, ECF No. 218 at *26-29. The jury was unable to reach a verdict regarding failure to intervene. <u>Id.</u> A mistrial was declared with respect to the failure to intervene claims. Trial Tr. 888:16-18, ECF No. 218 at 35. Judge Weinstein granted defendants' motion for judgment notwithstanding the verdict and entered judgement for defendants on all counts. Mem., Order & J. (Sept. 30, 2014), at 15, ECF No. 203. In finding that police had probable cause to arrest plaintiff for, <u>inter alia</u>, kidnapping, Judge Weinstein found that "police had good reason to suspect that a two-year-old boy had been kidnapped" and "that police sensibly took the position that the photographs were of a type used to show that a missing child was alive and could still be ransomed and saved." <u>Id.</u> at 11-12.

Plaintiff appealed. The Second Circuit affirmed Judge Weinstein's ruling with respect to the false arrest and excessive force claims, holding that "a reasonable law enforcement officer could have concluded that there existed probable cause to arrest plaintiff . . . ; accordingly, defendants can claim the protection of qualified immunity." <u>Figueroa v. Mazza</u>, 825 F.3d 89, 93 (2d Cir. 2016). In so holding, the circuit "ha[d] no trouble concluding . . . that, early in their investigation, defendants developed evidence sufficient to warrant a reasonable officer in the belief that the child in the Duane Reade photos had been the victim of a crime." <u>Id.</u> at 100. The circuit vacated this court's judgment with respect to plaintiff's failure to intervene and unlawful entry claims. <u>Id.</u> at 94.

On remand, the case was reassigned to me. <u>See</u> Order of Recusal, ECF No. 229.

Pursuant to the Second Circuit's mandate, the remaining claims are unlawful entry with respect to defendants Karolkowski, Failla, and Mazza, and failure to intervene with respect to defendants Failla and Chan. Mandate, ECF No. 228; <u>see also</u> Joint Pre-Trial Order ("JPTO") at 3-4, ECF No. 238.

On December 12, 2016, I ordered the parties to prepare for trial by submitting required pretrial filings. Scheduling Order, ECF No. 236. The parties complied. <u>See, e.g.</u>, JPTO. In the parties' JPTO, defendants noted that they intended to move for summary judgment on the emergency aid doctrine, which was raised before Judge Weinstein but not addressed by his ruling or the Second Circuit. <u>Id.</u> at 4 n.4. I granted defendants permission to bring this motion on February 14, 2016. Scheduling Order (Feb. 14, 2017). This motion is now before the court.

## DISCUSSION

### A. Relevant Law

### 1. The Mandate Rule

"The mandate rule is a branch of the law-of-the-case doctrine." <u>Burrell v. United States</u>, 467 F.3d 160, 165 (2d Cir. 2006). It "requires a trial court to follow an appellate court's previous ruling on an issue in the same case." <u>United States v. Quintieri</u>, 306 F.3d 1217, 1225 (2d Cir. 2002) (citing <u>United States v. Uccio</u>, 940 F.2d 753, 757 (2d Cir. 1991)). "This rule holds 'that where issues have been explicitly or implicitly decided on appeal, the district court is obliged, on remand, to follow the decision of the appellate court." <u>Burrell</u>, 467 F.3d at 165 (quoting <u>United States v. Minicone</u>, 994 F.2d 86, 89 (2d Cir. 1993)). However, "where a party raises an issue that was not part of the appellate decision . . . 'a trial court may consider the matter.'" <u>Kuhl v. United States</u>, No. 07-CV-3680, 2008 WL 4527744, at *5 (E.D.N.Y. Sept. 30, 2008) (quoting <u>Burrell</u>, 467 F.3d at 165).

Defendants first raised the emergency aid exception to the warrant requirement on summary judgment before Judge Weinstein. See Defs.' Mem. Law Supp. Their Mot. Summ. J. at 6-8, ECF No. 146. However, because he found that plaintiff lacked standing to raise an unlawful entry claim, Judge Weinstein did not reach this issue. Hr'g Tr. 9:9-18, ECF No. 220 at 9. Nor did the Second Circuit address exigency on appeal. See generally Figueroa, 825 F.3d at 92-112. Therefore, the mandate rule does not preclude consideration of this issue on summary judgment.[14]

## 2. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The function of the court is not to resolve disputed issues, but to determine whether a genuine issue exists that must be tried. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986) (citing First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)). "While genuineness runs to whether disputed factual issues can 'reasonably be resolved in favor of either party,' materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Anderson, 477 U.S. at 250).

The moving party carries the burden of proving that no genuine dispute exists respecting

---

[14] Plaintiff also included a note in the JPTO that he planned to move for judgment as a matter of law on the unlawful entry claim based on unidentified "recent decisions" by New York state courts. JPTO at 7 n.5. Notably, plaintiff did not cite any relevant New York state court cases before Judge Weinstein, see Pl.'s Mem. Law Supp. Opp'n Defs.' Summ. J. Mot. & Cross-Mot. Summ. J. at 11-15, ECF No. 158, and did not include them in his opposition to defendants' motion and cross-motion for summary judgment, see Pl.'s Am. Mem. Law Opp'n Defs.' Summ. J. Mot. & Cross-Mot. Summ. J., ECF No. 251. I therefore conclude that plaintiff has no such authorities to raise.

any material fact, and it "may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). Once the moving party has met this burden, to avoid the entry of summary judgment, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998). "A genuine issue is presented if the evidence is such that a reasonable jury could return a verdict for the non moving party." Husser v. N.Y.C. Dep't of Educ., 137 F. Supp. 3d 253, 263 (E.D.N.Y. 2015) (quoting Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001)). In reviewing the record before it, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997) (citing, e.g., Anderson, 477 U.S. at 255; Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir. 1989)).

### 3. Exigent Circumstances

"The core premise underlying the Fourth Amendment is that warrantless searches of a home are presumptively unreasonable." United States v. Simmons, 661 F.3d 151, 156 (2d Cir. 2011) (citing, e.g., Kentucky v. King, 563 U.S. 452, 459 (2011)). Thus, "the Fourth Amendment guarantees an individual the right to be secure against forcible entry of his home save in exceptional circumstances. . . ." Loria v. Gorman, 306 F.3d 1271, 1283 (2d Cir. 2002) (quoting Hurlman v. Rice, 927 F.2d 74, 79 (2d Cir. 1991)). While "the warrant requirement is subject to certain reasonable exceptions," King, 563 U.S. at 459 (citing Brigham City v. Stuart, 547 U.S. 398, 403 (2006)), these "are few in number and carefully delineated and . . . the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless

searches or arrests," Loria, 306 F.3d at 1284 (quoting Welsh v. Wisconsin, 466 U.S. 740, 749-50 (1984)).

"One well-recognized exception applies when 'the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable. . . .'" King, 563 U.S. at 460 (quoting Mincey v. Arizona, 437 U.S. 385, 394 (1978)). The Second Circuit "use[s] the following factors as guides to determine whether exigent circumstances justifying a warrantless entry are present":

> (1) the gravity or violent nature of the offense with which the subject is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause . . . to believe that the suspect committed the crime; (4) strong reason to believe that the suspect is in the premises being entered; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the peaceful circumstances of the entry.

Loria, 306 F.3d at 1284 (quoting United States v. Fields, 113 F.3d 313, 323 (2d Cir. 1997)). These factors are not exhaustive, id., and "the core question is whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced officer, to believe that there was an urgent need to render aid or take action," United States v. Simmons, 661 F.3d 151, 157 (2d Cir. 2011) (alteration omitted) (quoting United States v. Klump, 536 F.3d 113, 117-18 (2d Cir. 2008)). See also United States v. MacDonald, 916 F.2d 766, 769 (2d Cir. 1990) (en banc) ("[T]he test for determining whether a warrantless entry is justified by exigent circumstances is an objective one that turns on the district court's examination of the totality of the circumstances confronting law enforcement agents in the particular case.").

Related is the "emergency aid" exception. King, 563 U.S. at 460. This exception provides that "law enforcement officers 'may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury.'" Michigan v. Fisher, 558 U.S. 45, 47 (2009) (quoting Brigham City, 547 U.S. at 403). In other

words, "[p]olice officers may enter a dwelling without a warrant to render emergency aid and

assistance to a person whom they reasonably believe to be in distress and in need of that

assistance." Tierney v. Davidson, 133 F.3d 189, 192 (2d Cir. 1998) (alteration in original)

(quoting Root v. Gauper, 438 F.2d 361, 364 (8th Cir. 1971)).

"For the exigent circumstances exception to apply, police must have bypassed a warrant

because the urgent need to act made resort to the warrant process impractical, not because they

lacked probable cause to obtain one." United States v. Williams, No. 12-CR-6152G, 2015 WL

429087, at *9 (W.D.N.Y. Feb. 2, 2015) (citing Sutterfield v. City of Milwaukee, 751 F.3d 542,

559-60 (7th Cir. 2014); Michigan v. Tyler, 436 U.S. 499, 509 (1978)), adopted, 2015 WL

3454430 (W.D.N.Y. May 29, 2015).  However, the emergency aid exception "does not

necessarily involve a suspicion of wrongdoing at the moment that the police take action, and

accordingly, does not consider probable cause or the availability of a warrant." United States v.

Calhoun, No. 3:16-cr-92 (SRU), 2017 WL 651943, at *5 n.11 (D. Conn. Mar. 21, 2017) (citing

Sutterfield, 751 F.3d at 560)).

Instead, the emergency aid exception applies where "there was 'an objectively reasonable

basis for believing' that medical assistance was needed, or persons were in danger." Fisher, 558

U.S. at 49 (quoting Brigham City, 547 U.S. at 406).  In applying this test, the court must not

"replace that objective inquiry into appearances with its hindsight determination that there was in

fact no emergency." Id.  "[T]his probable cause requirement[] must be applied by reference to

the circumstances then confronting the officer, including the need for a prompt assessment of

sometimes ambiguous information concerning potentially serious consequences." Tierney, 133

F.3d at 196-97 (quoting 3 Wayne LaFave, Search and Seizure § 6.6(a), at 391 (3d ed. 1996)).

"[K]idnapping investigations present unusually compelling circumstances for emergency

analysis." Oliver v. United States, 656 A.2d 1159, 1167 (D.C. 1995).  This is because

> [t]he victim, even if presently being adequately cared for and safe, could at any
> moment be harmed or be absconded to a point beyond discovery.  An infant in
> particular could thus be placed beyond the legal protections to ensure future
> custody and treatment in its best interests. . . . In short, a kidnap victim may be
> deemed inherently endangered.

Id.  Thus, courts across the country have consistently found exigency where police are

investigating a kidnapping or an endangered child. E.g., United States v. Benais. No. 13-192(1)

(RHK/LIB), 2013 WL 6078891, at *5-8 (D. Minn. Nov. 19, 2013); Keplar v. Mascetti, No. ED

CV 09-1982 PA (MRW), 2011 WL 6838666, at *5 (C.D. Cal. Nov. 14, 2011), adopted, 2011

WL 6838645 (C.D. Cal. Dec. 27, 2011) ("The Ninth Circuit has regularly found that officers are

not liable when they make a minimal, justifiable entry of a residence to determine whether a

child or other crime victim needs assistance."); Oliver, 656 A.2d at 1167-69 ("Other jurisdictions

have reflected the[] unique qualities of kidnapping in holding that kidnapping may create exigent

or emergency circumstances, even without direct evidence of a threat of bodily harm to the

victim." (collecting cases)); State v. Collins, 543 A.2d 641, 652 (R.I. 1988) ("[T]he discovery

that the possible presence in a suspect's apartment of an infant victim of a child snatching or

kidnap[p]ing create[s] an emergency or exigent circumstance permitting a warrantless entry into

said apartment. . . . To expect the police to secure a warrant while the infant . . . was removed

therefrom by a confederate of defendant strains credulity."), overruled on other grounds State v.

Hunt, 137 A.3d 689 (R.I. 2016).  Indeed, some courts have found exigency where police

conducted warrantless searches of locations reasonably believed to contain only evidence

relating to a kidnapping victim's location, and not the victim herself.  E.g., United States v. Bell,

357 F. Supp. 2d 1065, 1073-75 (N.D. Ill. 2005) (collecting cases).

Further, "the potential sexual exploitation of a minor is an exigent circumstance."  United

States v. Thomas, No. 3:14-CR-00031 (RNC), 2015 WL 164075, at *4 (D. Conn. Jan. 13, 2015), (internal record citation omitted), aff'd sub nom United States v. Walters, -- F. App'x --, 2017 WL 506990 (2d Cir. 2017); see also United States v. Gilliam, No. 11 Crim. 1083, 2012 WL 4044632, at *2 (S.D.N.Y. Sept. 12, 2012).  Therefore, district courts in this circuit have found that police investigating a missing or kidnapped child, particularly when coupled with evidence that the child is being sexually exploited, constitutes an exigency that allows warrantless entry into a home or hotel room where officers have an objectively reasonable belief the child is being held.  See Thomas, 2015 WL 164075, at *4; United States v. Williams, No. 12-CR-6152-FPG, 2015 WL 3454430, at *3-4 (W.D.N.Y. May 29, 2015).

### 4.  Qualified Immunity

"Governmental actors, including police officers, enjoy qualified immunity from suit for constitutional violations under 42 U.S.C. § 1983 . . . if it was 'objectively reasonable for [the officer] to believe that his actions were lawful at the time of the challenged act."  Myers v. Patterson, 819 F.3d 625, 632 (2d Cir. 2016) (alteration in original) (quoting Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995)).  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'"  Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).  As the Second Circuit emphasized in affirming the judgment against plaintiff on his false arrest claim:

> When a plaintiff alleges that a law enforcement officer's official conduct renders him personally liable in damages, our inquiry is not whether the officer should have acted as he did.  Nor is it whether a singular, hypothetical entity exemplifying the 'reasonable officer' . . . would have acted in the same way.  It is instead whether any reasonable officer, out of the wide range of reasonable people who enforce the laws in this county, could have determined that the challenged action was lawful.

Figueroa, 825 F.3d at 100 (citations omitted). Here, defendants are "entitled to qualified immunity . . . if reasonable officers could disagree as to whether exigent circumstances were present." Loria, 306 F.3d at 1287 (citing Koch v. Town of Brattleboro, 287 F.3d 162, 169 (2d Cir. 2002)); see also Kerman v. City of New York, 261 F.3d 229, 236 (2d Cir. 2001).

While the official's conduct and the situational context are questions of fact, "the question of whether it would be clear to a reasonable public official, engaging in that conduct in that situation, that his conduct was unlawful [is] a question of law" that must be "answered by the court." Lore v. City of Syracuse, 670 F.3d 127, 162 (2d Cir. 2012). Thus, "[t]he Supreme Court has expressly encouraged the use of summary judgment when qualified immunity is raised as a defense," Cartier v. Lussier, 955 F.2d 841, 844 (2d Cir. 1992), and the facts relating to the official's conduct and the context are undisputed. "On the other hand, if a factual determination is a necessary predicate to the resolution of whether qualified immunity is a bar, review [of this issue] is postponed" until after trial. Id. (citing Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990); P.C. v. McLaughlin, 913 F.2d 1033, 1039 (2d Cir. 1990); Dube v. State Univ. of N.Y., 900 F.2d 587, 595-96 (2d Cir. 1990)).

## B. Application

### 1. No Disputed Issues of Fact Remain

There is no genuine dispute of material fact regarding what the officers knew at the moment of the warrantless entry. The court has the benefit of a fully developed record, after two rounds of summary judgment briefing and a prior trial. While the warrantless entry was not at issue in the prior trial, plaintiff's false arrest claim was litigated. Although the legal standard governing these two claims is different, the same facts relevant to exigency were relevant to defendants' probable cause defense. The Second Circuit has affirmed summary judgment based

on the record of a prior trial between the same parties, where, despite presenting a different legal question, the same facts are relevant to both claims. Shulins v. New England Ins. Co., 360 F.2d 781, 786 (2d Cir. 1966). Such is the case here.

Further, the parties apparently agree that a trial on the illegal entry claim is unnecessary. Plaintiff has submitted no additional evidence on this motion, relying exclusively on testimony from the prior trial. See Am. Decl. Robert M. Rambadadt, ECF No. 252. In addition, plaintiff brings his own motion for summary judgment, arguing that "there exist[] no triable issues of fact." Pl.'s Am. Mem. Law Opp'n Defs.' Summ. J. Mot. & Cross-Mot. Summ. J. ("Pl.'s Mem.") at 5, ECF No. 251.[15]

After reviewing the record, I find no genuine issues of material fact precluding summary judgment on the issue of qualified immunity. Defendants have carried their burden to show that there is no dispute as to the facts known to the officers at the moment they entered the apartment. While plaintiff lists additional facts that were allegedly known to defendants, see Pl.'s Mem. at 6-7, he does not dispute that the facts defendants identify were also known at the moment of entry.

---

[15] Plaintiff does assert in a heading that disputed issues of fact preclude summary judgment on the issue of qualified immunity. Pl.'s Mem. at 12. However, his argument in this section is that evidence from Beatrice's deposition, submitted by defendants on this motion, is unsubstantiated hearsay that should not be considered. The court did not consider Beatrice's deposition in this motion.

Plaintiff identifies no disputed issues of fact in his memorandum of law, and therefore cannot claim a trial is needed. See Hicks, 593 F.3d at 166 ("[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." (alterations in original) (quoting Fletcher, 68 F.3d at 1456)).

## 2. Defendants Are Entitled to Qualified Immunity

Thus, the undisputed facts show that defendants knew the following at the moment they entered the apartment.[16] Explicit photographs of a child, including apparent "proof of life" photographs, had been taken five days before in a McDonald's restroom. Earlier that day, a woman had called Duane Reade several times, pleading that her order to print the photographs be canceled and the photographs be deleted. Surveillance tape showed that a woman had purchased the money order shown in the photographs. The woman in the surveillance tape, later determined to be the child's mother, was known to police from a custody dispute involving allegations of child abuse against the child's father. Incident to this dispute, the mother had told police that she had taken photographs of her child's anus to document his physical condition before visits with his father. At the moment of entry, the child had not yet been located by police. However, his mother's roommate claimed to have seen him earlier in the day. The child's grandmother, admittedly in a custody dispute with her daughter, suspected plaintiff may pose a threat to the child. The grandmother stated that plaintiff was a cult leader who had bruised the child's mother while "exorcising demons" from her. The child's father had similarly characterized plaintiff as a cult leader when he was interviewed by an officer investigating the

---

[16] While not all of these facts were directly known to the officers who conducted the warrantless entry, the collective knowledge doctrine generally allows an officer conducting an arrest or search to rely on information known to other officers in supporting a claim of probable cause or reasonable suspicion. See United States v. Colon, 250 F.3d 130, 135 (2d Cir. 2001) ("Under the collective or imputed knowledge doctrine, an arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation." (citing United States v. Hensley, 469 U.S. 221, 230-33 (1985); United States v. Canieso, 470 F.2d 1224, 1230 n.7 (2d Cir. 1972))). Here, there was extensive communication between all officers involved. See supra, pp. 5-6.

alleged abuse.  Finally, plaintiff's phone, which had been used to call in IAB complaints relating to potential abuse of the child, was also used to cancel the order for the photographs.

Under these circumstances, a reasonable officer could have concluded that exigent circumstances existed.  A reasonable officer could have concluded that explicit "proof of life" photographs, taken in a McDonald's restroom, indicated that the child had been kidnapped.  The apparent kidnapping created an urgent need to locate the child.  While the mother's roommate told Officer Nagrowski that she had seen the child and his mother that morning, officers are not required to take this explanation "on faith."  See Figueora, 825 F.3d at 102.  Further, "[b]y the time of his arrest, police officers had firmly linked plaintiff to the photographs through his telephone," and knew that he was viewed as a threat to the child by the child's grandmother.  Mem., Order & J. (Sept. 30, 2014), at 13, ECF No. 203.  A reasonable officer could have concluded that plaintiff was a suspect in the kidnapping.  See id. (finding probable cause to arrest plaintiff for kidnapping).  A reasonable officer could have further concluded that a kidnapping suspect held the missing child at his location.

Of course, some facts known to the officers also suggested an explanation for the photographs that did not create an urgent need to locate the child: namely, that the photographs were taken by his mother to document suspected abuse.  But few facts relevant to this explanation were known to police at the moment of entry.  They had not yet located Shirley to hear her explanation.  It is true that Detective Hawkins's file contained scattered references to the fact that Shirley had taken photographs of the child's anus on a prior occasion to document alleged abuse.  However, Detective Hawkins nowhere describes any earlier photographs as including indicia of a "proof of life" photograph.  Instead, they were described as "taken at Dr. Hassan's office."  Pl.'s Proposed Ex. 6 at 5.  A reasonable officer could have concluded that the

earlier photographs were careful documentation by a doctor, not at all similar to the elaborately staged photoshoot in a McDonald's restroom that the photographs evidenced. Crucially, no earlier photographs were themselves included in Detective Hawkins's file. Therefore, even considering Detective Hawkins's file, officers would still be entitled to qualified immunity with respect to their decision to enter plaintiff's mother's apartment.

Finally, plaintiff claims that the following facts were known to the police: (1) "that Shirley Saenz had custody of her son"; (2) "that there had been no missing person reports filed by the father"; and (3) that "[t]he phone log generated for the phone number showed calls made to Duane Reade in addition to calls made to the FBI, Department of Justice and NYPD Legal Department." Pl.'s Mem. at 6-7. These alleged facts are either irrelevant to the determination of whether the child was in the apartment, or both irrelevant and unsupported by the record.

For these reasons, defendants are entitled to the defense of qualified immunity. I do not reach the question of whether exigent circumstances existed that, in fact, justified a warrantless entry.

## CONCLUSION

For the reasons explained above, defendants' motion for partial summary judgment is granted. Therefore, no claims remain against defendants Mazza, Karolkowski, and Nagrowski, [17] and they are dismissed from the case. See JPTO at 3-4 (explaining which defendants are liable on which of plaintiff's two remaining claims). The Clerk of Court is respectfully directed to update the caption accordingly.

Plaintiff's failure to intervene claims against defendants Failla and Chan will proceed to

---

[17] There are no remaining claims against Nagrowski, who did not enter plaintiff's apartment and did not witness the alleged assault. See JPTO at 1 n.1.

trial.  See JPTO at 4.  In light of this opinion, the parties are ordered to amend the following documents:

- The JPTO shall be amended to remove all witnesses, deposition designations and exhibits that do not relate to the failure to intervene claim;

- The proposed jury charge (ECF No. 239) shall be amended to remove all instructions not relating to the failure to intervene claim and to comply with my individual practice rules.[18]

- The parties' motions in limine may be supplemented to reflect this opinion.  The parties do not need to amend the motions in limine previously filed at ECF Nos. 240-44.  The court will address the effect of this opinion on those motions in a later opinion addressing motions in limine.

The updated JPTO, any new motions in limine, and updated jury charge shall be filed on ECF on or before April 13, 2017.  Changes to this schedule may be made only with permission from the court.

SO ORDERED.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated:        March 30, 2017
              Brooklyn, New York

---

[18] The parties' prior submission did not comply with my requirement that parties must submit, with respect to any disagreements over proposed jury instructions: (1) a single redlined instruction with one party's edits to the other party's proposed language and (2) memoranda of law explaining why their version is correct and their adversary's version is incorrect.

23